KING, C.J,
 

 for the Court.
 

 ¶ 1. This appeal arises from a complaint filed in the Forrest County Chancery Court by A.J. Jones (A.J.) — the executor of Jacqueline Polk Jones’s estate — and Martha Polk Douglas (Martha) seeking to partition the real property Frank Abner Polk (Frank), Jacqueline Polk Jones (Jacqueline), and Martha inherited from their parents, E.C. and Ruth Polk. Because the co-tenants, Frank, Jacqueline, and Martha were unable to mutually agree on the division of the property after several years, A.J. and Martha filed a complaint to partition the real property and sell the personal property. As a result, the chancellor ordered the real property to be sold and the proceeds from the sale to be divided equally among the beneficiaries. Aggrieved, Frank appeals the judgment of the chancellor. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On July 26, 1973, Ruth L. Polk (Ruth) died testate. Thereafter an estate on behalf of Ruth was opened in the Chancery Court of Forrest County by the action styled
 
 In the Matter of the Estate of Ruth L. Polk, Deceased,
 
 Cause No. 30,643. Ruth’s will provided that the home place property, Polk Mansion, be subject to a life estate given to her husband E.C. Polk (E.C.) and the Rawls Springs property become part of a trust created under her will. The will further provided that upon the death of E.C., the life estate and the trust terminated and title to the real properties, Polk Mansion and the Rawls Springs property, and Ruth’s personal property became vested in her three children, Frank, Jacqueline, and Martha. On December 7, 1987, E.C. died testate, and an estate was opened in the Chancery Court of Forrest County by the action styled
 
 In the Matter of the Last Will and Testament and Codicils of E.C. Polk, Deceased,
 
 Cause No. P-756.
 

 ¶ 3. On February 12, 1992, because Ruth’s estate was solvent and there was no further reason for retaining the real prop
 
 *712
 
 erties as part of the estate, the chancellor entered an order which directed record title in the real properties be vested in Frank, Jacqueline, and Martha. This action relieved the administrator of all further responsibility for the real properties. In addition, the chancellor vested the personal properties contained within the Polk Mansion and the Rawls Springs property in the three children with the provision that within thirty days they reach a mutual agreement on the division and allocation of the personal property. Absent such an agreement, the chancellor provided that the personal property would be sold at a public sale.
 

 ¶ 4. No agreement was reached on the division of the personal property. However, in an order dated February 23, 1993, the chancellor rescinded and eliminated the language requiring the sale of the personal property. By 2005, an agreement on the division of the real property still had not been reached by Frank, Jacqueline, and Martha. As a result, Martha and A.J., the executor of the estate of Jacqueline who died testate in 2001, filed an action in the Forrest County Chancery Court to partition the real property and sell the personal property styled as
 
 Jones v. Polk,
 
 Cause No. 05-0250-GN-W. The only real property requested in the complaint to be partitioned was the Polk Mansion.
 

 ¶ 5. Due to the condition of the property, in April and August 2005, Frank, A. J., and Martha were notified that the Polk Mansion was in violation of the Historic Conservation Ordinance and International Property Maintenance Code of the City of Hattiesburg. In 2006, the City of Hatties-burg published notice of a hearing regarding the condemnation of dilapidated buildings within the City of Hattiesburg. The Polk Mansion was included among those buildings.
 

 ¶ 6. On June 30, 2005, A.J. and Martha filed a motion requesting the chancellor to appoint Jimmy Havard as commissioner to conduct the partition sale of the Polk Mansion. On July 15, 2005, Frank secured a $100,000 line of credit in an effort to purchase his sibling’s interest in the real property. Frank’s efforts were unsuccessful. On August 8, 2006, Frank filed a motion to dismiss the partition action or, alternatively, to stay the partition action while asking the court to reconsider the February 12, 1992, order formally vesting the real property in Frank, Jacqueline, and Martha. On September 6, 2006, the chancellor denied the motion without prejudice stating the issue was moot. Subsequently, A.J. and Martha filed an amended complaint, attaching Exhibit C, which was a description of the personal property situated at the Polk Mansion, and Exhibit D, which was a copy of Mississippi Code Annotated section 11-21-3 (Rev.2004). On October 5, 2006, Frank then filed a motion to dismiss the amended complaint, a motion for leave to file a third party complaint, and a motion to join as necessary and indispensable parties, the estates of Jacqueline, Ruth, and E.C. On October 9, 2006, A.J. and Martha filed a motion for leave to file a second amended complaint for the sole purpose of attaching Exhibit D-l, which was a copy of Mississippi Code Annotated section 11-21-3 (Rev.2004); Exhibit D-2, which was a copy of the February 12,1992, decree, which vested title of the real property, Polk Mansion, sought to be partitioned in Frank, Jacqueline, and Martha; and Exhibit E, which was a copy of the chancellor’s order filed on February 23, 1993. The motion was granted, and the second amended complaint was filed on November 2, 2006. On December 13, 2006, the chancellor conducted a hearing on motions that were before the court.
 

 ¶ 7. On February 12, 2007, as a result of the hearing, the chancellor denied Frank’s
 
 *713
 
 motion to dismiss the amended complaint as being moot, because the documents complained of as not having been attached were attached to the second amended complaint. The chancellor also denied Frank’s motion to file a complaint against the estate of Jacqueline and dismissed Frank’s motion to join necessary and indispensable parties because the parties had already agreed to a waiver and joinder for and on behalf of the estate of Jacqueline. Additionally, the chancellor appointed a commissioner, who would retain an appraiser to have the Polk Mansion appraised and oversee the sale of the property. Upon completion of the appraisal, Frank, A.J., and Martha were to be given fourteen days from receipt of the appraisal to make an offer to purchase the real property. In the absence of a written acceptance, the commissioner was ordered to proceed with a sale of the real property. A copy of the appraisal report was filed with the court and mailed to Frank and his attorney Michael Barefield and to R. Christopher Wood, counsel for A.J. and Martha. The chancellor ruled that the issue of division or allocation among Frank, Jacqueline, and Martha of the personal property would be referred to the Honorable Sebe Dale in the proceeding filed in the Chancery Court of Forrest County, styled
 
 In the Matter of the Estate of Ruth L. Polk, Deceased,
 
 Cause No. 30,643.
 

 ¶ 8. On May 21, 2007, the commissioner filed a petition to have the court approve a contract to sell the property to a third party for $75,000. During the hearing on June 4, 2007, on the petition to sell the property, Frank initially attempted to write a check to purchase the property for $75,010. The chancellor denied the petition to sell the property to a third party and ordered the commissioner to sell the property at a public sale. The chancellor did inform Frank that although the hearing was not the appropriate place to purchase the property, he would have an opportunity to bid on the property at the public sale. On June 22, 2007, the commissioner filed a notice that the Polk Mansion would be sold at a public sale on August 24, 2007, at the Paul B. Johnson Chancery Courthouse to the highest bidder for not less than $80,000. A copy of that notice was mailed to Frank on June 22, 2007.
 

 ¶ 9. On August 21, 2007, Frank acting pro se filed what was styled as a Motion for Equitable or Injunctive Relief and Notice of Hearing. That filing states the following: “Attached hereto is a check for $5,000 that when added to the $75,010 check in the court file as of June 4, constitutes Frank’s offer to purchase for price not less than appraisal. Wherefore, petitioner prays for the relief set forth above and throughout the pleading filed by Michael C. Barefield and for such other and further relief which in equity this Honorable Court deems just and appropriate.” At a hearing on his motion on August 23, 2007, Frank made another unsuccessful attempt to purchase the property. The chancellor denied Frank’s motion and ordered the sale to proceed. At the public sale, a third party placed the highest bid but failed to secure the necessary funds to purchase the property. Thereafter, the property was offered to the second highest bidder. The record does not indicate whether Frank attended the public sale.
 

 ¶ 10. Feeling aggrieved, on September 17, 2007, Frank appealed the sale of the property, and the chancellor ordered the commissioner to stay the sale of the property pending resolution of this appeal. On appeal, Frank raises three issues: (1) whether the trial court erred in ordering the property be sold without Frank having actual notice of his right to bid on the property; (2) whether the chancellor erred in. failing to join indispensable and neces
 
 *714
 
 sary parties; and (3) whether the chancellor abused his discretion by ordering the sale of the property when Frank was ready, willing, and able to purchase the property.
 

 STANDARD OF REVIEW
 

 ¶ 11. [As an appellate court, we will] “not interfere with the chancellor’s findings of fact unless they were manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Weissinger v. Simpson,
 
 861 So.2d 984, 987(¶ 11) (Miss.2003) (internal quotations omitted).
 

 DISCUSSION
 

 I. Whether the chancellor erred in ordering that the property be sold without Frank having actual notice of his right to bid on the property.
 

 ¶ 12. Frank argues that he did not receive notice of the February 12, 2007, order regarding the right of first refusal to bid on the property. Frank alleges the chancellor, without explanation, shortened the notice period directed by the will from forty-five days to fourteen days.
 

 ¶ 13. Ruth’s and E.C.’s wills gave Frank, Jacqueline, and Martha a forty-five-day notice and right of first refusal to purchase the real property for a reasonable sum should it be sold. However, the real property at issue in this case was not part of the estate, and it had not been since 1992. It was ordered to be sold under the partition action.
 

 ¶ 14. Frank was in court on December 13, 2006, when the chancellor made the decision to proceed with the sell of the real property. It was the February 12, 2007, order implementing the decision to sale the real property at the public sale that Frank argues he did not receive. In the February 12, 2007, order, the chancellor gave Frank, A.J., and Martha a fourteen-day notice after receipt of the appraisal to make an offer to purchase the property. In addition, the commissioner mailed a copy of the appraisal report to Frank and his attorney on April 24, 2007.
 

 ¶ 15. On June 22, 2007, Christopher Howdeshell, the court-appointed commissioner, filed a notice of sale of the real property to occur at a public sale, located at the Paul B. Johnson Chancery Courthouse on August 24, 2007, at 10:00 a.m. Howdeshell notes that a copy of that notice was simultaneously mailed to Frank on June 22, 2007. Therefore, Frank had a sixty-three-day notice of the sale and an opportunity to bid on the property.
 

 ¶ 16. A.J. asserts that Frank’s argument is without merit because the pleadings were served upon counsel of record; thus, the chancellor was bound to abide by Mississippi Rule of Civil Procedure 5(b).
 

 ¶ 17. Under Mississippi Rule of Civil Procedure 5(b)(1), “[w]henever service ... is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service upon party himself is ordered by the court.” “When an attorney makes an appearance for any party in a case, that attorney will not be allowed to withdraw as attorney for the party without the permission of the court.” URCCC 1.13.
 

 ¶ 18. As far as the chancellor knew Frank was represented by counsel. Therefore, service of a copy of the February 12, 2007, order on Frank’s attorney, Barefíeld, regarding the public sale was sufficient for actual notice to Frank. However, during a hearing before the chancellor, Barefíeld testified that he inadvertently did not deliver a copy of the February 12, 2007, order to Frank. Prior to February 12, 2007, the relationship between Frank and Barefíeld apparently had
 
 *715
 
 become strained. On March 15, 2007, Barefield filed a motion to withdraw as Frank’s counsel. The order granting Barefield leave to withdraw as Frank’s counsel was filed on March 28, 2007. Barefield was obligated to act in his capacity as counsel for Frank until allowed to withdraw by the chancellor. Therefore, service on Barefield was appropriate.
 

 ¶ 19. Considering all the evidence before him, the chancellor ruled that not only did Frank receive proper notice of the February 12, 2007, order through his attorney, but he was also aware that the property was to be sold from the hearing on December 13, 2006, from the receipt of the appraisal report, and from the notice of sale filed by Commissioner Howdeshell on June 22, 2007. Therefore, we find that Frank’s argument that the chancellor ordered the property to be sold without notice is without merit.
 

 II. Whether the chancellor erred in failing to join indispensable and necessary parties.
 

 ¶ 20. Frank argues that the chancellor erred in failing to join Martha’s estate as an indispensable and necessary party after her death in April 2007. Frank contends that Martha’s estate held an interest, but it was not party to the partition action pursuant to Mississippi Rule of Civil Procedure 19(a).
 
 [1]
 
 Therefore, he argues that no valid title could be conveyed since the owner of record of property was not before the court.
 

 ¶ 21. A.J. contends that Martha was party to both the complaint for partition and the amended complaints. Prior to her death in April 2007, Martha had already given her consent and approval of the partition prior to her death by filing the complaint. A.J. asserts that Martha’s successor must be substituted in order to bring about the sale, but this would have no bearing on the court’s order to proceed with a public sale.
 

 ¶ 22. “[The appellate courts] will not review matters on appeal that were not first raised at the trial level.”
 
 Shaw v. Shaw,
 
 603 So.2d 287, 292 (Miss.1992). “Before an issue can be presented to this Court, it must first be presented to the trial court.”
 
 Wilburn v. Wilburn,
 
 991 So.2d 1185, 1191(¶ 13) (Miss.2008) (citation omitted).
 

 ¶23. Martha died on April 12, 2007. There is no indication in the record that Frank filed any document which could be interpreted as a request to have Martha’s estate substituted as a party in this action. Therefore, the issue of the failure to join Martha’s estate as an indispensable and necessary party is proeedurally barred. Frank’s argument that the chancellor erred in failing to join Martha’s estate as an indispensable and necessary party is without merit.
 

 III. Whether the chancellor abused his discretion by ordering the sale of the property when Frank was ready, willing, and able to purchase the property.
 

 
 *716
 
 ¶24. Frank asserts that he was willing to pay the full appraisal price plus ten dollars. He had secured financial backing through a letter of credit from The Peoples Bank of Biloxi in July 2005 to purchase the property. Frank argues that it was the manifest intent in Ruth’s and E.C.’s wills that their home place remain in the family and that their children be given every opportunity to purchase it before having it sold to a third party. Frank asserts that “[i]n construing a will, the intention of the testator is controlling, unless the intention is invalid under the law.”
 
 May v. Hunt,
 
 404 So.2d 1373, 1376 (Miss.1981). Frank contends that his two siblings (or executors on their behalf) had an opportunity to bid on the property, but they did not do so; therefore, they have not been prejudiced.
 

 ¶ 25. A. J. asserts that the value of the house and property has decreased and deteriorated to the point where the property was condemned by the City of Hatties-burg. A.J. argues that Frank was given several opportunities prior to the public sale as well as the day of the sale to purchase the property, but he failed to do so. We find that the chancellor did not abuse his discretion to take whatever action was necessary to bring this action to a close.
 

 ¶ 26. The property was no longer a part of the estate; thus, the chancellor ordered the sale of this property not as a part of the estate, but as a separate partition action. Applying Mississippi Code Annotated section 11-21-11 (Rev. 2004), we find that the following two-prong inquiry should be conducted as to the propriety of a partition sale:
 

 A partition sale can be had if it will (1) better promote the interest of all parties than a partition in kind or (2) if the court be satisfied that an equal division of the land cannot be made. Affirmative proof of at least one of these statutory requirements must affirmatively appear in the record in order for the court to decree a partition by sale. Further, the chancellor has no authority to decree a sale unless the statutory requisites are clearly met and a substantial reason exists for choosing partition by sale over partition in kind. The joint owner seeking a partition sale has the burden of proving that the land is not susceptible to partition in kind and that a sale is the only feasible method of division.
 

 Georgian v. Harrington,
 
 990 So.2d 813, 816(¶ 9) (Miss.Ct.App.2008) (internal quotations and citations omitted). “[T]his Court reviews the appropriateness of a partition by sale on a case-by-case basis.”
 
 Id.
 
 at (¶ 10).
 

 ¶ 27. The property was formally vested in Frank, Jacqueline, and Martha since February 1992. From February 1992 until the partition action was filed on May 3, 2005, the parties had been unable to agree upon the sale of the property. The property had deteriorated so significantly that it was declared a health and safety hazard by the City of Hattiesburg, and it was slated for demolition. After A. J. and Martha filed a complaint to have the land partitioned, the chancellor ordered a commissioner appointed and the property to be sold at a public sale after notice to Frank, A.J., and Martha, and thereafter, the proceeds were to be distributed equally-
 

 ¶ 28. Frank received a copy of the appraisal. Frank was aware of the time and place of the public sale. Frank was aware that he had the right to appear and bid on the property. There was no indication that Frank attended the public sale to bid on the property. Because Frank was in fact given notice and ample opportunity to purchase the real property, we find that this issue is without merit. It should be
 
 *717
 
 noted that, Frank’s claim notwithstanding, the issue before the chancellor was not whether the testator’s intent was being carried out, but the issue was how to separate the interests of Frank, Jacqueline, and Martha in the real property.
 

 ¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. LEE, P.J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . Mississippi Rule of Civil Procedure 19(a) provides:
 

 A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:
 

 (1) in his absence complete relief cannot be accorded among those already parties, or
 

 (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.
 

 If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.